**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louise Andrich, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Gus Kostas, et al., <br><br> Defendants. | No. CV-19-02212-PHX-DWL <br><br> **ORDER** |

Pending before the Court are (1) Defendants' "Motion for Court Order for California Mental Health Sealed Records and Arizona Pharmacy Board Records," which is currently lodged under seal (Doc. 62), and (2) Defendants' motion for leave to file the aforementioned motion and the exhibits thereto under seal (Doc. 61). For the following reasons, the motion for records is granted and the motion to seal is denied.

## BACKGROUND

This lawsuit arises from the fatal shooting of Alexandre Andrich by Phoenix Police Department ("PPD") Officer Gus Kostas. (Doc. 31 ¶ 1.) The lawsuit was brought by Louise Andrich, in her individual capacity as Mr. Andrich's sister and as the administrator of Mr. Andrich's estate, and by Mr. Andrich's minor siblings AL.A. and AM.A. (*id*. ¶¶ 3-5), but the Court dismissed, for lack of standing, all plaintiffs except for Louise Andrich (hereinafter "Plaintiff") in her capacity as personal representative of Mr. Andrich's estate. (Doc. 36 at 12.) The original named defendants were Kostas, fellow PPD Officer Brian Peters, the City of Phoenix ("the City"), and Angela Hernandez, but the City and

Hernandez have been dismissed (Docs. 16, 36), such that Officers Kostas and Peters (hereinafter "Defendants") are the only remaining defendants in this action.

The relevant facts alleged in the second amended complaint ("SAC") are as follows. Defendants "contacted" Mr. Andrich on the morning of June 12, 2018 at First Avenue and Osborn Road in Phoenix. (Doc. 31 ¶ 20.) Mr. Andrich "was unarmed and never posed a threat to anyone" and also "suffered from a mental disability of schizophrenia which was readily apparent." (*Id*. ¶¶ 20, 22.) Defendants "attempted to detain and/or seize" Mr. Andrich by "physically restrain[ing him] with their hands and force." (*Id*. ¶ 20.) Defendants "then began using hand and fist strikes against" Mr. Andrich and "each deployed their Tasers at [Mr. Andrich] when such force was not need[ed]." (*Id*.) Then, as Mr. Andrich was "turning away" and "in a non-aggressive manner began walking away," Officer Kostas "fatally shot [Mr. Andrich] in the torso for no lawful reason." (*Id*.) The SAC alleges that Officer Peters "had the opportunity to deescalate the situation and avoid all force" but "failed to do so" and also "failed to intervene to prevent the fatal shooting" despite the "ability and duty" to do so. (*Id*. ¶¶ 20-21.)

**DISCUSSION**

I. <u>Motion to Seal</u>

Defendants' one-page motion to seal seeks leave to file under seal their motion for records—in its entirety—as well as the 31 exhibits attached to the motion. (Doc. 61.) Plaintiff neither opposed nor endorsed the motion.[1]

**A. Legal Standard**

The public has a general right to inspect judicial records and documents, such that a party seeking to seal a judicial record must overcome "a strong presumption in favor of access." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). To do so, the party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring

---

[1] Plaintiff filed a response (Doc. 65) to Defendants' lodged motion for records (Doc. 62) and Defendants filed a reply (Doc. 66) in support of that motion. Both of these filings were mis-docketed as being responsive to the motion to seal (Doc. 61), when in fact no response to the motion to seal was filed.

disclosure . . . ." *Id.* at 1178-79 (internal quotation marks and citations omitted). The Court must then "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (internal quotation marks omitted). "After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (internal quotation marks omitted). Due to the "strong preference for public access," the "compelling reasons" standard is a "stringent" one. *Id.* at 1096-97.

There is a narrow "exception" for "sealed materials attached to a discovery motion unrelated to the merits of a case," under which "a party need only satisfy the less exacting 'good cause' standard.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). Here, Defendants' motion for records is not a dispositive motion—it's a discovery motion—but that does not necessarily mean the exception applies. "[P]ublic access to filed motions and their attachments does not merely depend on whether the motion is technically 'dispositive.'" *Id.* at 1101. "Rather, public access will turn on whether the motion is more than tangentially related to the merits of a case." *Id.* "While many technically nondispositive motions will fail this, some will pass." *Id.* Indeed, the "'compelling reasons' standard applies to *most* judicial records." *Id.* at 1098.

The "compelling reasons" standard applies here. Defendants' motion for records cannot be said to be "unrelated" or only "tangentially related" to the merits of this case. One of the important factual issues in this case involves Mr. Andrich's behavior at the time of the incident. Both sides apparently agree that Mr. Andrich was, at the time of the incident, exhibiting behaviors tied to his mental health issues. (Doc. 31 ¶ 20 [ "Mr. Andrich . . . suffered from a mental disability of schizophrenia which was readily apparent."]; Doc. 62 at 2-3 ["The decedent's mental health records evidence . . . a threat . . . identical to Officer Peters' concern in this case. . . . The decedent had significant and documented violent outbursts when any individual attempted to place boundaries on his behavior, which is directly at issue in this litigation."].)

**B. Analysis**

Defendants seek leave to file, under seal, their 14-page motion for records and the 31 exhibits attached to their motion. The motion and attached exhibits total 139 pages. The motion to seal, which is one page in length, states:

> Exhibit 1 is Plaintiff's temporary restraining order, which contains confidential personal identifying information, including Plaintiff's home address and Decedent's birthday. Exhibits 4 to 30 are medical records from San Jose Behavior Health and Community Hospital of the Monterey Peninsula, which contain Decedent's privileged and HIPAA-protected health information. Defendants' Motion itself should be sealed because it cites to, nearly verbatim, and incorporates protected material from Decedent's confidential medical records.

(Doc. 61.)

Defendants do not explain why Exhibit 1 should be filed under seal in its entirety, rather than simply redacted to the extent it contains Plaintiff's home address and birth date. Defendants do not offer any rationale for sealing Exhibit 2 (Plaintiff's response to Defendant Kostas' first set of non-uniform interrogatories and Plaintiff's response to Defendant Kostas' first set of requests for production of documents) or Exhibit 3 (the PPD incident report regarding notifying Plaintiff of Mr. Andrich's death).

As for Exhibits 4 through 30 (Doc. 62-2 at 56-139), "an individual's privacy rights with regard to medical records [are] diminished after death." *Marsh v. Cty. of San Diego*, 2007 WL 3023478, \*3 (S.D. Cal. 2007). Whatever interest might remain in maintaining the confidentiality of a deceased person's medical records "belongs, not to the deceased, but to the survivors." *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1153 n.1 (9th Cir. 2012). However, Plaintiff, "who would appear to be the one[] with an interest in keeping the documents confidential, [has] neither requested that the documents be sealed nor opposed [Defendants'] request." *Duenez v. City of Manteca*, 2013 WL 6816375, \*23 (E.D. Cal. 2013).

More important, Plaintiff put Mr. Andrich's schizophrenia at issue by filing this lawsuit, which turns in part on the allegation that Defendants acted improperly by *not* taking into account that Mr. Andrich "suffered from a mental disability of schizophrenia

1     which was readily apparent." (Doc. 31 ¶ 20.) "[W]here a party puts certain information at
2     issue, that party's ability to claim an interest in privacy is weakened." *Hesche v. NXP USA*
3     *Inc.*, 2020 WL 8461529, *1 (D. Ariz. 2020). Plaintiff cannot bring this action and then
4     reasonably expect confidentiality as to Mr. Andrich's schizophrenia.[2] *See, e.g.*, *Shapiro v.*
5     *Hasbro Inc.*, 2016 WL 9137526, *3 (C.D. Cal. 2016) ("Hasbro put these
6     documents at issue in the litigation and thus fails to [] make a particularized showing of
7     compelling reason[s] to file these exhibits under seal."); *B.F. v. Amazon.com, Inc.*, 2019
8     WL 4597492, *2 (W.D. Wash. 2019) ("By bringing this lawsuit against Defendants,
9     [Plaintiffs] have put [information sought to be sealed] directly at issue, and cannot
10    reasonably expect filings in this case not to include details about [that information]."). *Cf.*
11    *Weisberg v. Takeda Pharm. U.S.A., Inc.*, 2018 WL 6252458, *2 (C.D. Cal. 2018) ("[A]
12    patient-litigant has no privilege as to communication relevant to an issue concerning the
13    patient's condition, if the patient put that condition at issue."); *Ballard v. Terros Inc.*, 2020
14    WL 8613674, *2 (D. Ariz. 2020) ("Where, as here, Plaintiff has put her medical condition
15    at issue in the complaint, the Court will not broadly grant leave to file all of Plaintiff's
16    medical records under seal.").

17         Thus, Defendants' motion to seal is denied without prejudice. Because the asserted
18    interest in confidentiality belongs to Plaintiff, a subsequent motion to seal, if any, should
19    be brought by Plaintiff. If Plaintiff wishes to file a motion to seal certain documents (or
20    portions of documents), she must demonstrate—for each document or portion of a
21    document sought to be sealed—that the material is beyond the scope of what is at issue in
22    this action. If Plaintiff does not file a motion to seal by July 12, 2021, the lodged motion
23    for records and attached exhibits (Doc. 62) will be filed in the public record.

24     …
25     …
26     …

---

[2]    Indeed, Defendants' assertion in their reply in support of their motion for records—that "[a]s the decedent has passed and his mental health is directly at issue in this litigation, his privacy concerns no longer overrides" when it comes to sealed California state court records (Doc. 66 at 1)—is equally salient in the context of the motion to seal pending here.

II. Motion for Records

### A. California State Court Records

Defendants request a court order for the "pleadings, applications, affidavits, declarations, testimony, court filings, Minute Entry Orders, and any video and/or audio recordings from the following cases in Monterey County, California," the records of which are sealed:

- 16MH000113, Writ of Habeas Corpus in the Matter of Alexandre Andrich, from Louise Andrich, filed October 24, 2016.
- 17MH000065, Riese Hearing (Right to Refuse Treatment) in the Matter of Alexandre Andrich, from Natividad Medical Center, filed July 14, 2017.
- 17MH000078, Writ of Habeas Corpus in the Matter of Alexandre Andrich, from Natividad Medical Center, filed August 2, 2017.

(Doc. 62 at 1.)

Defendants assert that "[t]hese three cases are expected to contain discoverable information regarding the decedent's claimed damages in the case, his prognosis for any effective treatment, and his documented history of violence, which was not disclosed in response to written discovery, nor in [Plaintiff's] deposition." (*Id.* at 2.) According to Defendants:

> The mental health cases are likely to contain information that is relevant to both damages, liability, and to impeach the Plaintiff's discovery response. Within these mental health cases (referred to as 5150 and 5250 cases under California law), involving petitions for involuntary holds, it is expected that there will be affidavits from treating providers and witnesses regarding his behavior, history of taking medications, and prognosis. All of this information is relevant to the claimed damages in this case—loss of enjoyment of life and the decedent's life expectancy.

(*Id.* at 4.)

Plaintiff objects on the sole ground that "principles of comity and the Full Faith and Credit Clause" suggest that this Court should not order a California state court to produce sealed records. (Doc. 65 at 2.)

Defendants reply that "this Court can [o]rder Plaintiff herself to obtain the records as the Personal Representative ('PR') of the Estate," which she can do "by seeking them from the California court, or seeking them from the decedent's lawyer in those proceedings and/or his conservator, Ms. Terry Scarlett." (Doc. 66 at 1-2.)

Because this proposed solution would moot Plaintiff's sole objection, the Court will employ it. Plaintiff is ordered to obtain the records and produce them to Defendants in a timely manner. If the records have not been produced to Defendants by July 22, 2021, Plaintiff must file a detailed status report explaining, with specificity, the steps she has taken to date to obtain and produce the records and providing an estimate on when the production will be complete.

**B. Arizona Board Of Pharmacy Records**

Defendants also request that the Court order the Arizona Board of Pharmacy to provide Defendants with Mr. Andrich's "prescription records in Arizona." (Doc. 62 at 3.) According to Defendants, such records will show whether Mr. Andrich "obtained any medications in Arizona," which in turn will bear on whether Mr. Andrich "was medication compliant." (*Id.* at 3.)

Plaintiff argues that Mr. Andrich's prescription records are irrelevant because a toxicology report demonstrated the absence of any drugs in his system at the time of his death. (Doc. 65 at 3.) Plaintiff further argues that whether Mr. Andrich was "complaint [sic] with his medications" is irrelevant because it does not bear on whether Defendants' conduct was "objectively reasonable." (Doc. 65 at 3.)

Defendants reply that Mr. Andrich lived in Arizona for seven months, and the "length of time that the decedent was not taking medications is directly relevant to damages and his decompensation." (Doc. 66 at 6.) Moreover, Defendants note that Plaintiff previously reported Mr. Andrich for violent behavior, which she "directly tied to the decedent's medication non-compliance." (*Id.* at 6-7.)

    1. <u>Legal Standard</u>

Rule 26(b)(1) allows discovery as to "any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[3] Under Rule 26(b)(1), "[i]nformation . . . need not be admissible in evidence to be discoverable."

As for the burden of proof, "the party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)." *Doe v. Swift Transp. Co.*, 2015 WL 4307800, *1 (D. Ariz. 2015). This "is a relatively low bar." *Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020). *See generally* 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 26, at 801-02 (2021) ("For discovery purposes, courts define relevance broadly, stating that information is relevant if it bears on or might reasonably lead to information that bears on any material fact or issue in the action. . . . [C]ourts are quick to point out that discovery is concerned with relevant information—not relevant evidence—and that as a result the scope of relevance for discovery purposes is necessarily broader than trial relevance.") (footnotes and internal quotation marks omitted). If the movant meets its burden of establishing relevancy, "the party opposing discovery has the burden to demonstrate that discovery should not be allowed due to burden or cost and must explain and support its objections with competent evidence." *Doe*, 2015 WL 4307800 at *1.

…

---

[3] The current version of Rule 26(b)(1) was enacted in 2015. An earlier version provided that the requested material had to be "relevant to the subject matter involved in the pending action," and the Ninth Circuit has recognized that the change in 2015 (under which "the 'subject matter' reference [was] eliminated from the rule, and the matter sought must [now] be 'relevant to any party's claim or defense'") "was intended to restrict, not broaden, the scope of discovery." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020). *See also* Fed. R. Civ. P. 26, advisory committee's note to 2015 amendment (noting that Rule 26(b)(1) was amended in 1983 in part "to encourage judges to be more aggressive in identifying and discouraging discovery overuse," that the "clear focus of the 1983 provisions may have been softened, although inadvertently, by [subsequent] amendments," and that the 2015 amendment was intended in part to "restore[] the proportionality factors to their original place in defining the scope of discovery").

### 2. Analysis

Defendants have the better side of this argument. Whether (and for how long) Mr. Andrich was non-compliant with his prescribed medications for schizophrenia is relevant to the issue of damages because prolonged non-compliance may have caused decompensation. These issues also potentially bear on the issue of liability, because there is evidence that Mr. Andrich behaved violently when he was not compliant with his medications and one of the key disputed issues in this case is whether Defendants' conduct during their interaction with Mr. Andrich was "objectively reasonable." *Cf. Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 944-45 (9th Cir. 2009) (affirming district court's admission of evidence that the decedent "had drugs in his system at the time he was shot" and had been involved in "two [previous] kidnapping attempts," in civil rights action in which police officers were accused of using excessive force, because those pieces of evidence "made it more probable that [the decedent] was trying to provoke a police shootout, rather than trying to surrender").

Accordingly,

**IT IS ORDERED** that Defendants' motion to seal (Doc. 61) is **denied without prejudice**. Plaintiff may, by July 12, 2021, file a motion to seal certain documents (or portions of documents) currently lodged at Doc. 62.

**IT IS FURTHER ORDERED** that if Plaintiff fails to file a motion to seal by July 12, 2021, the Clerk of Court shall file in the public record the motion lodged at Doc. 62—which this Order grants—and the exhibits thereto.

**IT IS FURTHER ORDERED** that Defendants' motion for records (Doc. 62) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff obtain and produce to Defendant in a timely manner the pleadings, applications, affidavits, declarations, testimony, court filings, minute entry orders, and any video and/or audio recordings from the following cases in Monterey County, California:

- 16MH000113, Writ of Habeas Corpus in the Matter of Alexandre

Andrich, from Louise Andrich, filed October 24, 2016.
- 17MH000065, Riese Hearing (Right to Refuse Treatment) in the Matter of Alexandre Andrich, from Natividad Medical Center, filed July 14, 2017.
- 17MH000078, Writ of Habeas Corpus in the Matter of Alexandre Andrich, from Natividad Medical Center, filed August 2, 2017.

**IT IS FURTHER ORDERED** that if the aforementioned records have not been produced to Defendants by July 22, 2021, Plaintiff must file a detailed status report explaining, with specificity, the steps she has taken to date to obtain and produce the records and providing an estimate on when the production will be complete.

**IT IS FURTHER ORDERED** that the Arizona Board of Pharmacy shall provide Defendants with Mr. Andrich's "prescription records in Arizona.".

Dated this 1st day of July, 2021.

Dominic W. Lanza
United States District Judge